The Kantrow Law Group, PLLC
Attorneys for the Debtor
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
Fred S. Kantrow
Hailey L. Kantrow

UNITED STATES BANKRUPTCY COURT  RETURN DATE: **7/25/24**
EASTERN DISTRICT OF NEW YORK    TIME: **10:30 a.m.**
-----------------------------------------------------------x
In re:

WHITEHEAD ESTATES, LLC,

Case No.: 24-42200-ess
Chapter 11

Debtor.
-----------------------------------------------------------x

### DEBTOR'S APPLICATION PURSUANT TO 11 U.S.C. 543 DIRECTING TURN OVER OF PROPERTY OF THE ESTATE

TO:  HON. ELIZABETH S. STONG
     UNITED STATES BANKRUPTCY JUDGE

Whitehead Estates, LLC, the debtor and debtor-in-possession (the "Debtor"), by and through its attorneys, the Kantrow Law Group, PLLC, respectfully submits this as and for its application (the "Application") pursuant to section 543 of title 11 of the United States Code (the "Bankruptcy Code") seeking entry of an Order directing turnover of property of the estate, and states as follows:

### HISTORY

1.  The Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on May 27, 2024 (the "Petition Date").  No trustee, examiner or official committee has been appointed in this case.

2.  The Debtor owns and operates a certain multi-family apartment complex located in Hartford, Connecticut.

3.  Prior to the Petition Date, the Debtor was in default of its obligations to FM Home Loans ("FM") the mortgagee and secured creditor.  In addition, the Debtor was also in default on

its obligations in connection with municipal water supplied by The Metropolitan District (the "Metropolitan").

4. FM commenced a foreclosure action (*FM Home Loans v. Whitehead Estates, LLC, et al.*) which action is pending in Connecticut state court. FM sought and obtained the appointment of a receiver. Ian Lagowitz ("Lagowitz") of Trigild ("Trigild") was appointed receiver on behalf of FM (the "FM Receiver").

5. In addition, Metropolitan likewise sought the appointment of a receiver to collect the unpaid water charges which, upon information and belief, became a lien against the real property. Craig Yelin ("Yelin") of Metropolitan Receivership, LLC, was appointed the Metropolitan Receiver (the "Metropolitan Receiver").

6. By letter dated May 30, 2024, a copy of which is annexed hereto as Exhibit A, both Lagowitz and Yelin were advised of the bankruptcy filing and were advised that they were to immediately turn over to the Debtor any and all rents collected as well as an accounting so that the Debtor would understand the amounts collected by and distributed by the FM Receiver and/or the Metropolitan Receiver. Neither Lagowitz nor Yelin have provided a meaningful response to the May 30, 2024, letter.

7. While it is still early in the life of this bankruptcy case, the Debtor does not have possession of the subject property and its revenue, and thus has not been afforded the opportunity to maintain, to seek additional tenants, or to develop a restructuring, refinancing or sale strategy. The Debtor has been dispossessed of the subject property since the inception of this case.

## ARGUMENT

8. When the Debtor filed for relief under the Bankruptcy Code, the estate was created. The scope of the estate is determined by the language in section 541 of the Bankruptcy Code which

provides, in relevant part, that: (a) the commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case…(6) proceeds, product, offspring, rents, or profits of or from property of the estate, except such as the earnings from services performed by an individual debtor after the commencement of the case. (7) Any interest in property that the estate acquires after the commencement of the case.

9. The structure of the Bankruptcy Code, the policy behind it and the legislative history all suggest "that § 541(a)(1)'s scope is broad." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 (1983) (footnote omitted). *See Matter of Yonikus,* 974 F.2d 901, 904 (7th Cir, 1992) ("The legislative history of § 541(a) in both the House and Senate provides, 'The scope of this paragraph is broad. It includes all property, including tangible or intangible property, causes of action, and all other forms of property currently specified…"). There is no dispute that the subject real property is property of the bankruptcy estate.

10. Section 541 also brings into the estate "any property made available to the estate by other provisions of the Bankruptcy code. Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *Whiting Pools,* 4672 U.S. at 205 (citation and footnote omitted).

11. Among those provisions are sections 542 and 543. Section 542 is not applicable in this matter because it requires turnover of property held by an entity other than a custodian. The Bankruptcy Code tells us that the term "custodian" includes a receiver appointed by a state court. *11 U.S.C. §101(11).*

12. Property held by a custodian, such as a state-court appointed receiver, is governed by section 543: (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property. Section 543 further provides that the custodian must turn over any property it holds, and file an accounting regarding the property: (b) A custodian shall (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian,

13. Section 541 creates the bankruptcy estate, and section 543(b) requires custodians to turn over property of the debtor. Here, the Debtor made demand upon both the FM Receiver and the Metropolitan Receiver, and neither have responded to the Debtor's demand. Here, neither the FM Receiver nor the Metropolitan Receiver have sought relief from this Court that their performance and compliance with the obligations set forth in section 543 be excused. Had either sought relief, such relief would have to be denied.

14. Because section 543 of the Bankruptcy Code establishes specific default rules generally favoring the turnover of assets to the trustee or debtor in possession in order to centralize the administration of the bankruptcy estate and to further reorganization policy, the party requesting excusal from turn over bears the burden of establishing that compliance should be

excused. The burden then shifts to the debtor to show why turnover is appropriate. Thus, the general rule requires turnover while retention of property is the exception. Turnover is favored because a substantial weight is added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorganization if debtor cannot have access to all of its assets during its initial breathing spell. 5 Collier on Bankruptcy ¶ 543.05 (16th Ed. 2023). *See In re Franklin,* 476 B.R. 545, 551 (Bank. N.D. Ill. 2012) (moving party's burden is the preponderance of evidence standard). Generally, basic equities would favor a debtor in possession having access to all of its assets while attempting to reorganize. The turnover provisions of section 543 are part of the statutory expression of the Congressional preference that a chapter 11 debtor be permitted to operate and control its business during the reorganization process.

15. In this case, the interests of the Debtor are aligned with the interests of the non-lender creditors. FM and/or Metropolitan, if they were to seek that the receivers remain in place and their compliance with section 543 of the Bankruptcy Code be excused, would be acting in their own self-interests. They are not motivated by maximizing the return to other creditors. Allowing the receivers to remain in place would impose unnecessary costs that would benefit only FM and Metropolitan and would work to the detriment of the Debtor and all other creditors of the bankruptcy estate.

16. Moreover, allowing the receivers to remain in place would prevent implementation of the tools available to the Debtor under the Bankruptcy Code. Once the property is turned over to the Debtor, as Congress provided for as the default under the Bankruptcy Code, the Debtor may use the cash generated by the property in a variety of wats as contemplated by the Bankruptcy Code. It can make the necessary repairs to the property; it may market the property for sale; it may refinance the property, or it may engage in any combination of these options in developing a

plan of reorganization. In this way, the interests of the Debtor align with the non-lender creditors, who will be better served by turn over. Finally, if the receivers remain in place and the property remains in their hands, the Debtor loses its ability to freely fulfill its fiduciary obligations under the Bankruptcy Code.

17. Moreover, even if the interests of the secured creditors may be better served by allowing the receivers to remain in place, allowing the receivers to remain in place allows these particular creditors to further their interests without satisfying the requirements in the Bankruptcy Code with which they would otherwise need to comply in order to dispossess the Debtor and gain control over property of the estate. In other words, it shifts the burden imposed by other sections of the Bankruptcy Code, specifically sections 1104 and 362 of the Bankruptcy Code, away from the creditors and on to the Debtor.

18. Finally, allowing the receivers to remain in place and exercise control over property of the estate is inconsistent with the other remedies available under the Bankruptcy Code. Should FM and or Metropolitan seek to allow their receivers to remain in place, these parties would obtain results that would be available under the Bankruptcy Code but without meeting the requirements set forth in the Bankruptcy Code. Under the circumstances, the Debtor asks that this Court enter an Order compelling the receivers to deliver to the Debtor all property in their possession and provide an accounting so that the Debtor may have a complete understanding of the funds collected and disbursed on its behalf.

WHEREFORE Whitehead Estates, LLC, respectfully requests the entry of an Order, substantially in the form of the proposed order annexed hereto directing the turn over of property of the estate and directing the submission of accountings from the receivers to the Debtor, together

with such other and further relief this Court deems just and proper under the facts and circumstances herein.

Dated: Smithtown, New York
       July 11, 2024

                              The Kantrow Law Group, PLLC
                              Attorneys for the Debtor

BY:   S/Fred S. Kantrow
       Fred S. Kantrow
       732 Smithtown Bypass, Suite 101
       Smithtown, New York 11787
       516 703 3672
       fkantrow@thekantrowlawgroup.com